UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

MICHELE EVE SANDBERG,

                        Plaintiff,                          **REPORT AND**
                                                           **RECOMMENDATION**
            -against-                                       24-CV-8011 (RPK) (TAM)

MUSICXCLUSIVES, LLC,

                        Defendant.

-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

Plaintiff Michele Eve Sandberg commenced this action against Defendant MusicXclusives, LLC, on November 19, 2024. Plaintiff alleges that Defendant copied and displayed a photograph, created by Plaintiff and in which Plaintiff owns the rights and licenses, on its website and social media accounts, in violation of the Copyright Act, 17 U.S.C. § 101 *et seq. See generally* Compl., ECF 1.

The Clerk of Court certified Defendant's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, and Plaintiff subsequently moved for default judgment. Clerk's Entry of Default, ECF 14; Mot. for Default J., ECF 16. For the reasons set forth below, this Court recommends that Plaintiff's motion be granted in part and denied in part.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### I.  Factual Background

Plaintiff, a professional photographer, created a photograph of American rapper Jonathan Lyndale Kirk, professionally known as DaBaby (the "Photograph"), and published it on July 25, 2021, by commercially licensing it to platforms such as Shutterstock and *Miami New Times*. *See* Compl., ECF 1, ¶¶ 2, 12, 16–17; Pl. Mem. in

Supp. of Default J. ("Pl. Mem."), ECF 17, at 3; Sandberg Decl., ECF 19, ¶ 2, 4, 8; *see also* Ex. 1, ECF 1-1. Plaintiff created the Photograph intending for it to be used commercially, as well as for display and/or public distribution. Compl., ECF 1, ¶ 20; Sandberg Decl., ECF 19, ¶ 5. On October 24, 2021, Plaintiff registered the Photograph with the United States Copyright Office ("USCO") under Registration No. VA 2-276-515. Compl., ECF 1, ¶ 19; Pl. Mem., ECF 17, at 9; Sandberg Decl., ECF 19, ¶ 6; Sandberg Decl., Ex. 2, ECF 19-2.

According to Plaintiff's complaint, Defendant, a New York limited liability company ("LLC"), is the registered owner and operator of the website www.musicxclusives.com (the "Website"). Compl., ECF 1, ¶¶ 3, 8; Pl. Mem., ECF 17, at 3–4; Sandberg Decl., ECF 19, ¶¶ 9–10. Plaintiff alleges that Defendant profits off paid advertisements posted on the Website and uses various social media accounts associated with the username "@MusicXclusives" to promote the content posted to the Website. Compl., ECF 1, ¶¶ 3–5, 24–27; Sandberg Decl., ECF 19, ¶¶ 10–11.

On or about July 27, 2021, Defendant displayed the Photograph on the Website to illustrate a post about DaBaby titled "The Case of DaBaby and Homophobia in Hip Hop." Ex. 2, ECF 1-2, at ECF pp. 1–3. The next day, Defendant also posted the Photograph to its Facebook and verified Twitter (now known as "X") accounts. *Id.*, at ECF pp. 4–5; Pl. Mem., ECF 17, at 4. The Court observes that while the Facebook post associated with the URL in Plaintiff's exhibit appears to be live as of the date of this Order (albeit without a copy of the Photograph), *see* MusicXclusives (@MusicXclusives), Facebook (July 28, 2021), https://www.facebook.com/MusicXclusives/posts/10159672911714427 (last accessed Dec. 10, 2025), the posts on the Website and on X (formerly Twitter) are no longer accessible. *Accord* Apr. 29, 2025 Min. Entry & Order (representing that, at the time of the

2

default motion hearing held in this case, only one of the infringements, the Facebook post, was ongoing as of that date). Defendant did not have a license or permission to copy or display the Photograph in these ways. Compl., ECF 1, ¶¶ 34, 36; Pl. Mem., ECF 17, at 4; Sandberg Decl., ECF 19, ¶ 14.

Plaintiff observed the posts displaying the Photograph on December 8, 2021. Compl., ECF 1, ¶ 35; Sandberg Decl., ECF 19, ¶ 12. She claims that "a large number of people" also observed the posts containing the Photograph, and that these posts "increased traffic to the Website as well as the Accounts and, in turn, caused Defendant to realize an increase in its advertising and/or business revenues." Compl., ECF 1, ¶¶ 46–47; Pl. Mem., ECF 17, at 4–5. Plaintiff also avers that "Defendant's use of the Photograph harmed the actual market for the Photograph" and its use, "if widespread, would harm Plaintiff's potential market for the Photograph." Compl., ECF 1, ¶¶ 49–50; *see also* Sandberg Decl., ECF 19, ¶¶ 15, 23.

On August 2, 2024, Plaintiff, via counsel, sent Defendant a letter, requesting information about Defendant's license to display the image on the Website and social media accounts; Defendant never responded. Compl., ECF 1, ¶¶ 51–52; Nouhian Decl., ECF 18, ¶ 32; *see* Ex. 8, ECF 18-8. The instant litigation followed.

## II.  Procedural History

As discussed, Plaintiff began this case by filing a complaint on November 19, 2024. *See* Compl., ECF 1. On December 4, 2024, Defendant was served with summons and the complaint via service of process on the Secretary of State of New York, rendering Defendant's answer due on December 25, 2024. *See* Summons Returned Executed, ECF 6. Defendant did not answer or otherwise appear in this case. *See generally* Docket. Plaintiff first requested a certificate of default on January 2, 2025, which the Clerk of Court denied for failure to file a certificate of service of the request.

Request for Certificate, ECF 7; Jan. 6, 2025 ECF Order. Plaintiff's second attempt to request a certificate was denied for the same reason. *See* Request for Certificate, ECF 9; Sanders Aff., ECF 10; Jan. 14, 2025 ECF Order. On Plaintiff's third attempt, the request was granted. *See* Request for Certificate, ECF 11; Sanders Aff., ECF 12; Certificate of Service, ECF 13; Clerk's Entry of Default, ECF 14. On March 6, 2025, Plaintiff filed a motion for default judgment and supporting documents. Mot. for Default J., ECF 16.

On March 10, 2025, the Honorable Rachel P. Kovner referred the motion to the undersigned Magistrate Judge for a report and recommendation. Mar. 10, 2025 ECF Order Referring Mot. On April 10, 2025, the undersigned Magistrate Judge scheduled a default hearing for April 29, 2025, directed Defendant to appear, and directed the Clerk of Court to serve a copy of the notice and scheduling order upon Defendant and Mr. Leo Lysius, the apparent founder of the Website, by mail and email. Apr. 10, 2025 ECF Order; ECF 23. Defendant did not appear at the conference. Apr. 29, 2025 ECF Order. At the conference, the Court took the motion for default judgment under advisement. *Id.*

For the reasons set forth herein, the Court respectfully recommends granting the motion for default judgment in part.

## DISCUSSION

### I.  Legal Standards for Default

Federal Rule of Civil Procedure 55 provides a "two-step process" for obtaining a default judgment. *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). The plaintiff must first obtain an entry of default when a defendant "has failed to plead or otherwise defend" in an action. Fed. R. Civ. P. 55(a). Second, after the certificate of default is entered, and on the plaintiff's application, the district court may then enter a default judgment. Fed. R. Civ. P. 55(b)(2); *see also* E.D.N.Y. Local Civ. R. 55.2(c). A "plaintiff is not entitled to a default judgment as a matter of right simply because a

4

party is in default." *Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013). Rather, the decision to grant a motion for default judgment is "left to the sound discretion of [the] district court because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties."[1] *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993).

The district court must also determine whether the plaintiff's "allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). In making this determination, the "court is required to accept all of the . . . factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Id.* It is "the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012). Moreover, while a default constitutes an admission of liability as to well-pleaded allegations, a default is "not considered an admission of damages." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Under Federal Rule of Civil Procedure 55(b)(2), courts have discretion to decide whether an evidentiary hearing is necessary or whether the amount of damages can be determined based on detailed

---

[1] A plaintiff must also establish compliance with the procedural requirements of E.D.N.Y. Local Civil Rules 7.1, 55.1, and 55.2. Having carefully reviewed the filings in this case, the Court finds that Plaintiff's motion papers substantially comport with these rules. Specifically, Plaintiff requested a certificate of default in accordance with Local Rule 55.1(a)(1) and demonstrated that the Clerk of Court entered default. *See* Req. for Certificate of Default, ECF 11; Certificate of Default, ECF 14. Plaintiff also demonstrated that Defendant has failed to defend the action and that the pleadings were properly served in accordance with Local Rule 55.1(a)(2). *See* Aff. of Service, ECF 6. Plaintiff has further demonstrated that, as an LLC, Defendant was neither a minor nor in the military during the relevant period. *See* Nouhian Aff., ECF 18, ¶¶ 11–12. Finally, Plaintiff has certified the mailing of the request for the certificate of default and the motion papers to Defendant at its last known business address, in accordance with Local Rules 55.1(a)(4) and 55.2(a)(3). *See* Affs. of Service, ECF 13, ECF 22.

affidavits or documentary evidence. *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991). "The district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Here, too, the "plaintiff bears the burden of presenting proof of damages." *Joe Hand Promotions, Inc. v. Benitez*, No. 18-CV-6476 (ARR) (PK), 2020 WL 5519200, at *3 (E.D.N.Y. Aug. 27, 2020), *report and recommendation adopted*, 2020 WL 5517240 (E.D.N.Y. Sept. 14, 2020); *see also Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53–54 (2d Cir. 1993) (explaining that courts can assess damages based on "'detailed affidavits and documentary evidence'" (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989))). In the default posture, the moving party is "entitled to all reasonable inferences from the evidence offered." *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

## II. Entry of Default

In determining whether a defendant's conduct warrants entry of a default judgment, courts apply the same factors applicable to a motion to set aside entry of default. *See Enron Oil*, 10 F.3d at 96 (noting that "the factors examined in deciding whether to set aside a default or a default judgment are the same"). These factors include "1) whether the defendant's default was willful; 2) whether [the] defendant has a meritorious defense to [the] plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044 (LTS) (GWG), 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003); *see also Enron Oil*, 10 F.3d at 96. "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the

6

entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96. In this case, the Court concludes that entry of a default judgment is appropriate.

### A. Willfulness

In the context of default, willfulness "refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). That said, a defendant's "failure to respond to a complaint evinces willful default." *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 80 (E.D.N.Y. 2020) (citing *McNulty*, 137 F.3d at 738–39). Willfulness may also be presumed where, in addition to being properly served with the complaint, the defendant is notified of court proceedings and yet fails to respond. *See, e.g.*, *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006); *see also Antoine*, 489 F. Supp. 3d at 81. Defendant's failure to respond or otherwise appear in this action supports a finding of willfulness. Plaintiff adequately served Defendant, a New York LLC, by delivering the summons and complaint to the New York Secretary of State, as permitted by New York law. Summons Returned Executed, ECF 6; N.Y. Ltd. Liab. Co. L. § 303(a)(1); Fed. R. Civ. P. 4(e)(1), (h)(1); *see also Gov't Emps. Ins. Co. v. Onyema*, 790 F. Supp. 3d 147, 161 (E.D.N.Y. 2025) (explaining that New York law permits service upon an LLC via the New York Secretary of State). Defendant also failed to respond after being sent Plaintiff's request for a certificate of default. *See* Certificate of Service, ECF 13. Defendant again failed to respond or appear after Plaintiff moved for default judgment and after being sent notice of the motion and default hearing from the Clerk of Court.[2] *See* Mot. for Default J., ECF 16; Certificate of Service, ECF 22; Apr. 10, 2025 ECF Order. In light of Defendant's repeated failure to respond,

---

[2] Defendant was also sent a copy of the Court's minute entry for the April 29, 2025 default motion hearing. *See* Apr. 29, 2025 Min. Entry & Order.

despite being provided sufficient notice of this proceeding, the Court weighs this factor in favor of default.

## B. Meritorious Defense

"To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage." *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). Rather, "'[a] defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Id.* (quoting *Anilina Fabrique de Colorants v. Aakash Chems. & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988)). Here, Defendant has entirely failed to respond to the complaint. In such instances, "courts are unable to make a determination [of] whether the defendant has a meritorious defense." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013). Accordingly, "this factor weighs in favor of granting a default judgment." *Id.*

## C. Prejudice

"The final factor the Court must consider is whether the non-defaulting parties would be prejudiced if the motion for default were to be denied." *Id.* at 148. Denying a motion for default is prejudicial to the plaintiff where "'there are no additional steps available to secure relief.'" *Id.* (quoting *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226 (RLC) (RLE), 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008)).

In light of Defendant's failure to respond to both Plaintiff's and the Court's notices, "there is no indication that requiring Plaintiff[] to take further steps . . . would be effective in eliciting a response" from Defendant. *Mason Tenders*, 2003 WL 1960584, at *3. The Court therefore finds that Plaintiff would be unfairly prejudiced by denial of the motion for default.

All three factors weigh in favor of default. Seeing no other equitable reason for denying Plaintiff's motion, the Court recommends entering a default judgment.

8

## III. Liability

### A. Legal Standard

Under the Copyright Act, 17 U.S.C. § 501 *et seq.*, the owner of a copyright has, among other rights, "the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies . . . ; (2) to prepare derivative works based upon the copyrighted work; [and] (3) to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106; *see Fedorova v. DML News & Ent., Inc.*, No. 23-CV-7468 (OEM) (LGD), 2024 WL 5119108, at *3 (E.D.N.Y. Oct. 10, 2024) (collecting cases), *report & recommendation adopted*, Oct. 25, 2024 ECF Order. In addition, the "legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b). To succeed on a copyright infringement claim, a plaintiff must allege "'(i) ownership of a valid copyright; and (ii) unauthorized copying of the copyrighted work.'" *Sohm v. Scholastic Inc.*, 959 F.3d 39, 48 (2d Cir. 2020) (quoting *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003)), *abrogated on other grounds by Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024); *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001); *Corey Sipkin Photography LLC v. New Yirui Culture NY, Inc.*, No. 24-CV-8354 (ERK) (JAM), 2025 WL 2653826, at *2 (E.D.N.Y. Sept. 16, 2025).

For the reasons set forth below, the Court finds that Plaintiff has adequately demonstrated Defendant's liability under the Copyright Act, in the context of this default.

### B. Ownership of Valid Copyright

The existence of a certificate of registration "made before or within five years after first publication of the work shall constitute *prima facie* evidence of the validity of

the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *see also Corey Sipkin Photography LLC*, 2025 WL 2653826, at *2. Here, Plaintiff established her ownership of a valid copyright by registering the Photograph with the USCO on October 24, 2021, within three months of when the Photograph was first published. Compl., ECF 1, ¶ 19; Pl. Mem., ECF 17, at 9; Sandberg Decl., ECF 19, ¶ 6; Sandberg Decl., Ex. 2, ECF 19-2. In a copyright infringement case, "[i]n the context of a default judgment, where the well-pleaded allegations in the complaint are accepted as true, no further proof of ownership is required." *Sadowski v. Yeshiva World News, LLC*, No. 21-CV-7207 (AMD) (MMH), 2023 WL 2707096, at *4 (E.D.N.Y. Mar. 16, 2023), *report and recommendation adopted*, 2023 WL 2742157 (E.D.N.Y. Mar. 31, 2023).

Plaintiff's allegations contend that she first published the Photograph on July 25, 2021, and registered it with the USCO under Registration No. VA 2-276-515 on October 24, 2021, *i.e.*, within three months of initial publication. Compl., ECF 1, ¶¶ 16, 19; Sandberg Decl., Ex. 2, ECF 19-2. Given that Defendant, by not appearing, has "failed to offer evidence showing that the certificate of registration is invalid, Plaintiff sufficiently established [her] valid ownership of the copyright." *Sadowski*, 2023 WL 2707096, at *4; *see also Simhaq v. Kid Carter Touring, Inc.*, No. 20-CV-2057 (RPK) (RER), 2021 WL 3810754, at *3 (E.D.N.Y. Aug. 11, 2021), *report and recommendation adopted*, 2021 WL 3793876 (E.D.N.Y. Aug. 26, 2021).

### C. Infringement by Defendant

Plaintiff has likewise adequately pleaded that Defendant has infringed on her copyright. To show this second element, a plaintiff must (1) allege a violation of her rights under 17 U.S.C. § 106, discussed above, and (2) "meet a minimal burden to establish the work is original." *Korzeniewski v. Sapa Pho Vietnamese Rest. Inc.*, No. 17-CV-

5721 (MKB) (SJB), 2019 WL 312149, at *6 (E.D.N.Y. Jan. 3, 2019), *report and recommendation adopted*, 2019 WL 291145 (E.D.N.Y. Jan. 23, 2019).

Here, Plaintiff has alleged a violation of her copyright by stating that Defendant copied the Photograph to its Website and social media accounts without a license, permission, or other authorization. *See* Compl., ECF 1, ¶¶ 34, 36; Ex. 2, ECF 1-2 (cataloguing the infringements); Pl. Mem., ECF 17, at p. 4; Sandberg Decl., ECF 19, ¶ 14; *Korzeniewski,* 2019 WL 312149, at *6; *see also Reilly v. Plot Comm.*, No. 15-CV-5118 (PAE) (BCM), 2016 WL 6837895, at *5 (S.D.N.Y. Oct. 31, 2016) ("The well-pleaded allegations of plaintiff's complaint demonstrate that . . . defendant infringed [plaintiff's] copyright by producing and displaying an unauthorized copy of the Photograph on its website.").

Plaintiff has also met her "minimal" burden of demonstrating that the work is original. *Korzeniewski,* 2019 WL 312149, at *6. "In copyright cases, original 'means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity.'" *Fedorova*, 2024 WL 5119108, at *5 (quoting *Balhetchet v. Su Caso Mktg. Inc.*, No. 19-CV-4475 (PKC) (SJB), 2020 WL 4738242, at *3 (E.D.N.Y. Aug. 14, 2020)). Plaintiff avers that "[i]n creating the Photograph, Plaintiff personally selected the subject matter, timing, lighting, angle, perspective, depth, lens, and camera equipment used to capture the image and made each and every artistic determination necessary for the creation of the work." Compl., ECF 1, ¶ 18. Moreover, originality of a copyrighted work "can be inferred" from Plaintiff's claim of authorship. *Balhetchet*, 2020 WL 4738242, at *3 (collecting cases).

Accordingly, Plaintiff has adequately pleaded Defendant's liability under the Copyright Act.

## IV. Injunctive Relief

Plaintiff submits that she is entitled to a permanent injunction, restraining Defendant from continuing to infringe on her copyright. *See* Compl., ECF 1, at 8; Pl. Mem., ECF 17, at 19–20. Under the Copyright Act, courts may grant injunctions "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, a plaintiff must show the following:

> (1) that [she] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *see also Salinger v. Colting*, 607 F.3d 68, 77 (2d Cir. 2010). "[C]ourts generally grant permanent [injunctions] where liability has been established and there is a threat of continuing infringement." *Strike 3 Holdings, LLC v. Doe*, No. 23-CV-998 (ENV) (JAM), 2024 WL 3369986, at *10 (E.D.N.Y. July 11, 2024), *report and recommendation adopted*, July 31, 2024 ECF Order.

Here, Plaintiff has demonstrated her entitlement to a permanent injunction. First, Plaintiff has "no ability to adequately quantify her injury and in light of the difficulty associated with proving loss of sales resulting from an infringement," given Defendant's default, her injury is irreparable. Pl. Mem., ECF 17, at 20; *see Wareka v. Dryluxe LLC*, No. 21-CV-2422 (MKB) (LB), 2022 WL 2467544, at *3 (E.D.N.Y. Apr. 7, 2022) (observing that "'courts have tended to issue injunctions [in copyright cases] because to prove the loss of sales due to infringement is . . . notoriously difficult'" (quoting *Salinger*, 607 F.3d at 81–82) (alteration in *Wareka*)), *report and recommendation adopted*, 2022 WL 2753106 (E.D.N.Y. July 14, 2022). Second, because "[t]here is no indication that Defendant will cease its unlawful conduct, and the very real threat

12

remains of further infringement in the future," monetary remedies are often inadequate to compensate for that injury. Pl. Mem., ECF 17, at 20; Apr. 29, 2025 Min. Entry & Order (representing that one of the alleged infringements was continuing as of that date); *see Martinka v. Yeshiva World News, LLC,* No. 20-CV-5330 (KAM) (VMS), 2022 WL 4484655, at *5 (E.D.N.Y. Sept. 27, 2022) (finding that continuing infringement establishes the second element because defendant is "likely to continue infringing [plaintiff's] copyright") (quotation marks omitted)); *cf. Mecea v. Yid Info Inc.,* No. 23-CV-8409 (OEM) (MMH), 2025 WL 763599, at *7 (E.D.N.Y. Mar. 11, 2025) (denying injunctive relief where there was no threat of continuing infringement), r*eport and recommendation adopted in pertinent part,* 2025 WL 926204 (E.D.N.Y. Mar. 27, 2025). Third, the balance of hardships favors Plaintiff given that Defendant is in default "'and thus fails to identify any legitimate hardship.'" *Martinka*, 2022 WL 4484655, at *5 (quoting *Wareka,* 2022 WL 2467544, at *4). Fourth and finally, "'enjoining [D]efendant from using the Photograph[ ] would not disserve the public interest as the public has a compelling interest in protecting copyright owners' marketable rights to their work so as to encourage the production of creative work.'" *Martinka*, 2022 WL 4484655, at *5 (quoting *Wareka,* 2022 WL 2467544, at *4 (modifications in *Martinka*)).

Because Plaintiff has amply satisfied the four-factor test for injunctive relief, the Court recommends entering a permanent injunction, enjoining Defendant from infringing use of any of Plaintiff's works and directing Defendant to permanently remove any continuing infringements from its Website and social media accounts.

## V. Damages

### A. Statutory Damages

Plaintiff seeks an award of statutory damages in the amount of $30,000. Pl. Mem., ECF 17, at 11, 13–14. Under Section 504(c)(1) of the Copyright Act, "for all infringements

involved in the action, with respect to any one work," a copyright owner "may elect" to recover statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just" in lieu of actual damages and profits. 17 U.S.C. § 504(c)(1). Where a violation is found to be willful, courts may award up to $150,000 in statutory damages. *Id.* § 504(c)(2).

Courts in the Second Circuit consider the following factors to determine the amount of statutory damages for copyright infringement: "(1) the infringer's state of mind; (2) the expenses saved, and profits earned, by the infringer; (3) the revenue lost by the copyright holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's cooperation in providing evidence concerning the value of the infringing material; and (6) the conduct and attitude of the parties." *Bryant v. Media Right Prods.*, 603 F.3d 135, 144 (2d Cir. 2010).

As to the first factor, the infringer's state of mind, "'[c]opyright infringement is deemed willful by virtue of a defendant's default.'" *Fedorova*, 2024 WL 5119108, at *6 (quoting *Balhetchet*, 2020 WL 4738242, at *4). Plaintiff has not alleged her licensing fee or information that would illustrate the second and third factors. *See generally* Compl., ECF 1; Sandberg Decl., ECF 19. Such details would typically "allow[] a court to determine a fair award that would adequately compensate the copyright holder while also deterring potential infringers." *Balhetchet*, 2020 WL 4738242, at *4. However, in analogous cases to this, where there is no information concerning expenses saved or revenue lost, courts in this District have tended to "award much less than Plaintiff seeks, most typically between $1,000 and $5,000," on the rationale that no provision of evidence of actual damages "suggests that the actual harm was *de minimis*," and therefore, a lower award "is a fair balance between deterrence and recompense for a

14

one-time infringement of a photograph." *Corey Sipkin Photography LLC*, 2025 WL 2653826, at *4 (collecting cases).

In some respects, this case is analogous to others in this District where the plaintiff sought an award against a defaulting defendant for a one-time infringement. For example, in *Haker v. Tentree Int'l Inc.*, the court awarded $1,000 for a single instance of copying the plaintiff's photo on the defaulting defendant's website. No. 20-CV-1499 (KAM), 2021 WL 3884195, at *5 (E.D.N.Y. Aug. 31, 2021); *see also Dermansky v. Tel. Media, LLC*, No. 19-CV-1149 (PKC) (PK), 2020 WL 1233943, at *9 (E.D.N.Y. Mar. 13, 2020) (same). In this case, the alleged infringements involve only "one work" — the Photograph. 17 U.S.C. § 504(c)(1). However, each post — on the Website, X, and Facebook — constitutes a separate "display" of the Photograph, and therefore a separate infringement under the Copyright Act.[3] *See Prepared Food Photos, Inc. v. Chicken Joes, LLC*, No. 23-CV-3895 (JGLC) (JW), 2024 WL 384997, at *4–5 (S.D.N.Y. Jan. 12, 2024), *report and recommendation adopted*, 2024 WL 382529 (S.D.N.Y. Feb. 1, 2024). In addition, the displays pleaded in the complaint appear to have been removed, although the infringement contained in the Facebook post was continuing as of the date of the default hearing. *See* Apr. 29, 2025 Min. Entry & Order. Given that the underlying alleged infringements involved only one copyrighted work, and all appear to have been taken down, the infringement is somewhat similar to a one-time infringement. This

---

[3] The complaint lists five infringements, three of which are associated with one post on the Website. *See* Compl., ECF 1, ¶ 31; Compl., Ex. 2, ECF 1-2, at ECF pp. 1–3. One display appears to comprise the main image of the post; the second, a smaller copy of the Photograph appearing below the main image; and the third, a copy of the Photograph as it appears on a search page on the Website. *See Trombetta v. Novocin*, No. 18-CV-993 (RA), 2021 WL 6052198, at *12 (S.D.N.Y. Dec. 21, 2021) (observing that the display right is "broad" and "generally violated when a defendant displays the work without authorization").

militates against an award of damages falling on the high end of the spectrum granted by courts in this District, and in favor of an award at the lower end. *See, e.g.*, *Fedorova*, 2024 WL 5119108, at *6 (awarding $1,000 for a single instance of copying plaintiff's video on defaulting defendant's website); *Haker,* 2021 WL 3884195, at *5 (same); *Dermansky*, 2020 WL 1233943, at *9 (same).

On the other hand, Plaintiff alleges certain "aggravating factors" that support a more substantial award. *Martinka*, 2022 WL 4484655, at *6. For example, in *Martinka*, the Court found that the defendant's lack of response to a cease-and-desist letter indicated the defendant's willful state of mind, leading to a statutory damages award of $2,000 for a single infringement. *Id.* Here, Defendant not only declined to respond to Plaintiff's letter requesting information about Defendant's license (the "license audit letter"), but appears to have deleted the infringements at some point following the dispatch of that letter, with at least one infringement deleted only after this case was initiated. Compl., ECF 1, ¶¶ 51–52; Nouhian Decl., ECF 18, ¶ 32; *see* Ex. 8, ECF 18-8. While the license audit letter does not clearly warn Defendant of the risk of impending litigation, if Defendant removed the infringing posts — either in response to the letter or this lawsuit — Defendant's continued failure to respond evinces its willfulness as to the alleged infringements. *See Martinka*, 2022 WL 4484655, at *6; *see also Parsons v. Bong Mines Ent. LLC*, No. 19-CV-813 (JMA) (AKT), 2021 WL 931506, at *8 (E.D.N.Y. Feb. 18, 2021) (observing that courts in the Second Circuit "generally do not award the plaintiff maximum or substantial statutory damages" where "the corporate Defendant's state of mind is established solely through its default") (collecting cases), *report and recommendation adopted*, 2021 WL 930259 (E.D.N.Y. Mar. 11, 2021).

Given the totality of the circumstances here, the Court respectfully recommends an award of $1,000 for the three infringements associated with the Website, $1,000 for

the X post, and $2,000 for the Facebook post, for a total statutory damages award of $4,000. *See Sadowski*, 2023 WL 2707096, at *4 (awarding $7,500 for a continuing infringement where plaintiff had provided information regarding the licensing fee that the defendant would have paid); *Mantel v. Smash.com*, No. 19-CV-6113 (FPG), 2019 WL 5257571, at *3 (W.D.N.Y. Oct. 17, 2019) (awarding $2,500 for single infringement where defaulting defendant was a publisher and removed a "gutter credit" identifying the plaintiff as the owner of the photograph); *Martinka*, 2022 WL 4484655, at *6 (awarding $2,000 for the same where defaulting defendant failed to respond to cease-and-desist letter and removed plaintiff's credit); *Farrington v. Jewish Voice Inc.*, No. 21-CV-1575 (NGG) (AYS), 2022 WL 541645, at *5 (E.D.N.Y. Feb. 23, 2022) (awarding $1,500 for the same where defaulting defendant removed plaintiff's credit). The Court further recommends finding that this award is "reasonable given the nature of the infringement alleged," *Fedorova*, 2024 WL 5119108, at *6, the fact that the Facebook infringement continued well into the pendency of this case, the lack of evidence regarding expenses saved by Defendant or revenue lost by Plaintiff, and the likely effect of the cumulative award in "adequately compensat[ing] the copyright holder while also deterring potential infringers," *Balhetchet*, 2020 WL 4738242, at *4.

### B. Attorneys' Fees and Costs

Plaintiff requests $9,801 in attorneys' fees and $460 in costs. Pl. Mem., ECF 17, at 20. The Copyright Act allows courts, in their discretion, to "allow the recovery of full costs" and to "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *see also Balhetchet*, 2020 WL 4738242, at *5. In deciding whether to award attorneys' fees, courts may consider factors like "(1) the frivolousness of the non-prevailing party's claims or defenses; (2) the party's motivation; (3) whether the claims or defenses were objectively unreasonable; and (4) compensation and deterrence."

*Bryant*, 603 F.3d at 144. "The third factor — objective unreasonableness — should be given substantial weight." *Id.* In light of Defendant's willful conduct and the default judgment recommended above, the Court recommends an award of attorney's fees. *See Farrington*, 2022 WL 541645, at *6.

Courts must then assess whether the attorney's requested fee is reasonable. Courts have broad discretion in determining reasonable attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183–84 (2d Cir. 2008). The method for determining reasonable fees in this circuit is based on a number of factors, such as the labor and skill required, the difficulty of the issues, the attorney's customary hourly rate, the experience, reputation, and ability of the attorney, and awards in similar cases. *See Arbor Hill*, 522 F.3d at 186 n.3, 190. "[I]n copyright infringement cases, the courts evaluate the amount of work and skill involved and the result achieved to determine attorney's fees." *Wright v. Miah*, No. 22-CV-4132 (CBA) (JRC), 2023 WL 6219435, at *15 (E.D.N.Y. Sept. 7, 2023), *report and recommendation adopted*, 2023 WL 6216541 (E.D.N.Y. Sept. 25, 2023). "The starting point of the attorney's fee calculation is the lodestar method, under which fees are determined by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Fedorova*, 2024 WL 5119108, at *7.

When assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits. This is known as the "forum rule." *See Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174–75 (2d Cir. 2009) (recounting history of the forum rule). Ordinarily, "the burden is on the fee applicant to produce satisfactory evidence — in addition to the attorney's own affidavits — that the requested rates are in line with those prevailing in the community for similar services

18

by lawyers of reasonably comparable skill, experience[,] and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The current forum rates in the Eastern District of New York, which were recently adjusted for inflation, are "$450–$650 for partners, $300–$450 for senior associates, $150–$300 for junior associates, and $100–$150 for paralegals." *Rubin v. HSBC Bank USA, N.A.*, 763 F. Supp. 3d 233, 244 (E.D.N.Y. 2025); *see also Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232–33 (2d Cir. 2006) (noting that fee awards must take into account "the current market rate" in the district). In addition to typical billing rates, "case-specific factors like the novelty or complexity of the matter are appropriately considered in determining the reasonable hourly rate or hours billed." *Lilly v. City of New York*, 934 F.3d 222, 232 (2d Cir. 2019). In "straightforward matter[s] of copyright infringement" where the defendant "did not appear, the case involved no conferences or hearings, motion practice (other than the instant, unopposed motion), or discovery, and it did not require significant labor or skill, or present particularly difficult issues," courts need not adjust the reasonable hourly rate upward. *Mecea,* 2025 WL 926204, at *3.

Once a court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended in order to determine the presumptively reasonable fee. *See Arbor Hill*, 522 F.3d at 190; *id.* at 183 ("[T]he district court should generally use the prevailing hourly rate in the district where it sits to calculate what has been called the 'lodestar' — what we think is more aptly termed the 'presumptively reasonable fee . . . .'"); *see also Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" (quoting *Arbor Hill*, 522 F.3d at 183)). To calculate the presumptively reasonable fee, the Court looks at what a reasonable,

paying client would be willing to pay, "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190; *see also Simmons*, 575 F.3d at 174. With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit." *Scott v. City of New York*, 626 F.3d 130, 133 (2d Cir. 2010) (quotation marks omitted); *see also Finkel v. Universal Elec. Corp.*, 970 F. Supp. 2d 108, 127–28 (E.D.N.Y. 2013). The court must review the time records and the hours an attorney billed in order to determine reasonableness and, in doing so, should examine the value of the work product and "exclude excessive, redundant or otherwise unnecessary hours." *Concrete Flotation Sys., Inc. v. Tadco Constr. Corp.*, No. 07-CV-319 (ARR) (VVP), 2010 WL 2539771, at *5 (E.D.N.Y. Mar. 15, 2010) (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 2009)), *report and recommendation adopted*, 2010 WL 2539661 (E.D.N.Y. June 17, 2010). In so doing, the court determines a fee award "based on scrutiny of the unique circumstances of each case." *McDaniel v. County of Schenectady*, 595 F.3d 411, 426 (2d Cir. 2010).

     1.  *Calculating the Presumptively Reasonable Fee*

Here, Plaintiff's counsel's requested attorney's fee award is based on the hours and rates set forth in the following table:

| Name | Title | Hourly Rate | Hours Billed |
|---|---|---|---|
| Craig B. Sanders | Managing Partner | $895 | 1.8 |
| Jonathan Cader | Senior Associate | $600 | 3.5 |
| Dina Nouhian | Associate | $500 | 11.4 |
| Larita Yusuf | Associate | $500 | .6 |

| Name | Title | Hourly Rate | Hours Billed |
|------|-------|-------------|--------------|
| Julie Busch | Paralegal | $150 | 1 |

*See* Nouhian Decl., ECF 18, ¶¶ 18–25; Nouhian Decl., Ex. 4, ECF 18-4. Ms. Nouhian submits that the attorneys' hourly rates are "well within the range of hourly billing for similarly experienced attorneys" per a 2021 Report by the American Intellectual Property Law Association, and commensurate with the attorneys' 10 to 32 years of experience litigating in this practice area. Nouhian Decl., ECF 18, ¶¶ 18–25; Nouhian Decl., Ex. 5, ECF 18-5. These rates, however, are out of step with copyright cases in this district, as well as the forum rates outlined in *Rubin*. *See Fedorova*, 2024 WL 5119108, at *8 (collecting analogous copyright cases approving $350–$450 hourly rates for partners in this district; reducing Mr. Sanders's and Ms. Busch's hourly rates accordingly); *Corey Sipkin Photography*, 2025 WL 2653826, at *6 (reducing Mr. Sanders's, Mr. Cader's, and Ms. Nouhian's rates in light of *Rubin*); *Mecea*, 2025 WL 926204, at *3 (same as to Mr. Sanders, Mr. Cader, and Ms. Busch). Consequently, this Court recommends reducing the hourly rates for Mr. Sanders, Mr. Cader, Ms. Nouhian, Ms. Yusuf, and Ms. Busch, to $500, $325, $300, $300, and $125, respectively.

Plaintiff's counsel seeks reimbursement for 18.3 hours billed on this case. This number of hours is reasonable. *See Corey Sipkin Photography*, 2025 WL 2653826, at *6 (finding 18.1 hours expended in analogous default posture reasonable); *Mecea*, 2025 WL 926204, at *4 (same, 16.2 hours).

Consequently, the Court recommends an attorney's fee award of $5,762.50, based on the following revised calculations:

| Name | Revised Hourly Rate | Hours Billed | Revised Total |
|---|---|---|---|
| Craig B. Sanders | $500 | 1.8 | $900.00 |
| Jonathan Cader | $325 | 3.5 | $1,137.50 |
| Dina Nouhian | $300 | 11.4 | $3,420.00 |
| Larita Yusuf | $300 | .6 | $180.00 |
| Julie Busch | $125 | 1 | $125.00 |
| Total | | | $5,762.50 |

   2.  *Costs*

   Plaintiff further requests $460 in costs, representing the $405 filing fee and $55 in process server fees. Pl. Mem., ECF 17, at 20; Nouhian Decl., ECF 18, ¶¶ 28–30; Nouhian Decl., Ex. 7, ECF 18-7 (reflecting costs for service of process).[4] The Court takes judicial notice of the filing fee and finds that Plaintiff's request for the process server charges is documented. *See* ECF 1 (confirmation of $405 filing fee with corresponding receipt number); *Yanes v. Juan & Jon Inc.*, No. 19-CV-0201 (JS) (LGD), 2024 WL 1639932, at *2 (E.D.N.Y. Apr. 16, 2024) (taking judicial notice of filing fees); *see also Fedorova,* 2024 WL 5119108, at *8 (approving substantiated costs).

---

[4] The Court notes that the amount requested for process server fees is less than the amount indicated on the invoice submitted in support. *Compare* Nouhian Decl., ECF 18, ¶ 30, *with* Nouhian Decl., Ex. 7, ECF 18-7. Given that Plaintiff's memorandum seeks the lower of the two amounts, the Court declines to award Plaintiff more than what was requested in her motion, which was mailed to Defendant. *See* Affs. of Service, ECF 13, ECF 22; *cf.* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, *or exceed in amount*, what is demanded in the pleadings." (emphasis added)).

Accordingly, the Court recommends awarding Plaintiff's requested $460 in costs.

## CONCLUSION

Having found that Plaintiff has adequately demonstrated her entitlement to a default judgment and Defendant's liability, the Court respectfully recommends granting Plaintiff's motion for default judgment in part, and awarding Plaintiff damages in the amount of $10,222.50, comprising (1) $4,000 in statutory damages for the copyright infringement claim; (2) $5,762.50 in attorneys' fees; and (3) $460 in costs. The Court further recommends entering a permanent injunction, enjoining Defendant from infringing use of any of Plaintiff's works and directing Defendant to permanently remove any continuing infringements from its Website and social media accounts. Finally, the Court recommends awarding post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a).

\*    \*    \*    \*    \*

This report and recommendation will be filed electronically and a copy sent by mail to defaulting Defendant. As a courtesy, the Court also respectfully directs Plaintiff to provide a copy of this report and recommendation to Defendant forthwith and to file proof of same by **December 17, 2025**. Objections to this report and recommendation must be filed, with a courtesy copy sent to the Honorable Rachel P. Kovner at 225 Cadman Plaza East, Brooklyn, New York 11201, within fourteen (14) days of filing. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal both before the district court and appellate courts. *See, e.g., Caidor v. Onondaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object

timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate[ judge's] decision" (quotation marks omitted)).

      **SO ORDERED.**

Dated: Brooklyn, New York
      December 10, 2025

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE